**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No.  23 CR 129 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| LAVOIA HARDY. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Chicago Police Department officers arrested Defendant Lavoia Hardy after responding to a 911 call at a McDonald's. Hardy now moves to suppress the firearm and cocaine recovered from his vehicle, arguing they were recovered as a product of an illegal search and seizure. (Dkt. 42). For the following reasons, Hardy's motion to suppress [42] is denied.

## BACKGROUND

The facts here are not in dispute. On August 8, 2022, Chicago Police Department Officers Juan Escamilla and Joseph Wallace responded to a 911 call stating an unconscious individual in a vehicle was partially blocking a McDonald's drive-through lane. (Dkt. 42 at 1; Dkt. 44 at 1). The officers observed the individual—later identified as Defendant Lavoia Hardy—unconscious in the vehicle with the windows open and doors unlocked. (*Id.*) After approaching the vehicle, Officer Escamilla viewed through the open window a firearm wedged between the center console and the driver's seat. (*Id.*) The officers recovered the firearm (a loaded semi-automatic pistol) and Hardy awoke. (Dkt. 42 at 1; Dkt. 44 at 2). The officers proceeded to order Hardy out of the vehicle, handcuffed him, and placed him in their squad car. (Dkt. 42 at 1–2; Dkt. 44 at 2). Then Officer Wallace searched the vehicle's center console cupholder, recovering a clear plastic bag containing individually packaged baggies of cocaine. (*Id.*)

A Superseding Indictment charged Hardy with one count of unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1); one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1); and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (Dkt. 46). Hardy now moves to suppress the firearm and cocaine recovered by the officers as the product of an illegal search and seizure, arguing he had a legitimate expectation of privacy with respect to the vehicle and a possessory interest in both the firearm and area of the vehicle where the cocaine was found. (Dkt. 42).

## DISCUSSION

Hardy argues the search of the vehicle and seizure of the firearm and cocaine violated the Fourth Amendment prohibition against illegal searches and seizures.

1

First, the Court is not persuaded that the officers' initial encounter with Hardy was a seizure for Fourth Amendment purposes. "A seizure occurs under the Fourth Amendment if a reasonable person would not feel free to leave, but not every encounter with police officers implicates the Fourth Amendment." *United States v. Cade*, 93 F.4th 1056, 1060 (7th Cir. 2024) (citing *United States v. Holly*, 940 F.3d 995, 1000 (7th Cir. 2019)). Here, Hardy's vehicle was partially blocking a McDonald's drive-through lane and he was visibly unconscious, prompting a bystander to call 911. The officers approached Hardy's vehicle to investigate in response to the call. *See United States v. Clements*, 522 F.3d 790, 794 (7th Cir. 2008) (finding no seizure where officers investigated a parked and running car when they "did nothing that could have made [defendant] feel that his freedom was restrained"); *United States v. Gipp*, 147 F.3d 680 (8th Cir.1998) (finding no seizure where officer approached parked vehicle for welfare check on the occupants). In fact, "when the police walk up to someone who is either out on the street or sitting in a car that was already stopped (in other words, the police had nothing to do with the driver's decision to pull over and park), there is no seizure at all." *United States v. Williams*, 285 F. App'x 284, 287 (7th Cir. 2008) (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). Further, Hardy was in a publicly accessible drive-through lane. *See United States v. Byers*, 2019 WL 7605891, at *6 (N.D. Ind. Oct. 3, 2019), *adopted by*, 2019 WL 6044876 (N.D. Ind. Nov. 15, 2019) (finding an initial encounter between officers and defendant in a publicly accessible area consensual and collecting cases). The reasonable suspicion the officers required to approach Hardy in the first instance was zero, *Cade* 93 F.4th at 1060, and there are no facts to infer the officers arrived in any manner that made Hardy feel not free to leave, *Clements*, 522 F.3d at 794.

Once the officers approached Hardy, they immediately observed through his open windows a firearm between the center console and the driver's seat. The officers removed the firearm and ordered Hardy out of the vehicle. At this point, the interaction turned into a *Terry* stop, a "investigatory stop . . . limited to a brief, non-intrusive detention." *Cade*, 93 F.4th at 1060; *United States v. Scheets*, 188 F.3d 829, 837 (7th Cir. 1999) (noting an initially consensual encounter can develop into a *Terry* stop depending on the officer's conduct); *Gipp*, 147 F.3d at 685 (same). There, "the officer need only have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime." *Id.* (quoting *United States v. Shields*, 789 F.3d 733, 743 (7th Cir. 2015)). "The standard takes into account the totality of the circumstances—the whole picture" and is less than what is necessary for probable cause. *Shields*, 789 F.3d at 745 (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)). In fact, "certain behavior may give rise to reasonable suspicion when viewed in the context of other factors at play." *United States v. Shaffers*, 2018 WL 3141825, at *3 (N.D. Ill. June 26, 2018), *aff'd*, 22 F.4th 655 (7th Cir. 2022). Observing the firearm in plain sight and within Hardy's direct control gave the officers reasonable suspicion to awake and detain Hardy while investigating further.

Based on the facts presented to the Court, during a fast-moving sequence of events the officers removed Hardy from the vehicle, handcuffed him, and placed him in their squad car. The question of whether a *Terry* stop has turned into an arrest is a fine line: "[s]ubtle, and perhaps tenuous, distinctions exist between a *Terry* stop, a *Terry* stop rapidly evolving into an arrest and a de facto arrest" thus there is no "litmus-paper test for determining when a seizure exceeds the bounds of an investigative stop" and becomes an arrest. *United States v. Tilmon*, 19 F.3d 1221,

2

1224 (7th Cir. 1994) (cleaned up). Whether the officers handcuffing and moving Hardy to their squad car was a continuation of the *Terry* stop or a full-blown arrest is not critical: at this point the officers had the requisite reasonable suspicion or probable cause to take their actions based on Hardy's two apparent violations of state and municipal law.

An officer has probable cause to arrest, "if he has reason to believe, in light of the facts known at the time, that the suspect has committed or is about to commit a crime." *Gonzalez v. Village of W. Milwaukee*, 671 F.3d 649, 655 (7th Cir. 2012). Here the officers possessed several facts that gave rise to a probable cause that Hardy was committing a crime. First, Hardy was unconscious and blocking a drive-through lane for a significant amount of time, prompting a 911 call. Though the parties do not raise this issue, Hardy's improper parking likely violated Chicago Municipal Code's parking ordinances. *Whren v. United States*, 517 U.S. 806, 819 (1996) (finding even fine-only offenses justify probable cause for stops and arrests); *Shields*, 789 F.3d at 745 (finding *Whren* applied to parking violations and noting officers had "objective basis to believe [defendant] was violating the law" when defendant parked illegally in a crosswalk); *United States v. Johnson*, 874 F.3d 571, 574 (7th Cir. 2017) ("It is enough to conclude that *Whren* applies to both parking and moving offenses.").

Second, the loaded firearm was in plain view through the open windows of the vehicle. Even if Hardy could legally own a firearm, it is unlawful to carry an operable firearm in a vehicle unless, in relevant part, the firearm is unloaded, non-functional, and not immediately accessible. 720 Ill. Comp. Stat. Ann. 5/24-1(a)(4). The firearm the officers observed was loaded and directly accessible next to Hardy. These facts together gave officers probable cause to arrest Hardy. *See Clements*, 522 F.3d at 795; *Williams*, 285 F. App'x at 287. Thus, it is irrelevant whether the officers knew if Hardy had a valid FOID card or Concealed Carry License when detaining him.

Next, several exceptions to the Fourth Amendment permitted the warrantless search of Hardy's vehicle. In fact, the officer's search of the vehicle was valid under the automobile exception, a protective search, or a search incident to a lawful arrest.

**Automobile Exception.** Under the automobile exception to the Fourth Amendment, "an officer may search a vehicle when the officer has probable cause to believe that the vehicle contains evidence of criminal activity." *United States v. Paige*, 870 F.3d 693, 702 (7th Cir. 2017) (citing *Maryland v. Dyson*, 527 U.S. 465, 467 (1999)). As automobiles are readily mobile—thus reducing an individual's right to privacy—"searches of vehicles are reasonable when there is probable cause to believe that the search will uncover contraband or evidence of crime." *Shaffers*, 2018 WL 3141825, at *4 (citing *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005)). The probable cause arising from the loaded firearm in plain view and parking violation supported the officers' search of Hardy's vehicle for further weapons. That Hardy was at this point in the officers' squad car does not change this analysis. *See Byers*, 2019 WL 7605891, at *8 (noting that even though defendant was in custody, his vehicle "was still inherently mobile and [defendant] had a lesser expectation of privacy in it"); *United States v. Zahursky*, 580 F.3d 515, 523 (7th Cir. 2009) (same).

**Protective Search.** An officer with a "reasonable suspicion that a motorist may be armed and may be able to gain immediate control of weapons may conduct a protective search of the

3

passenger compartment of the vehicle without a warrant" during a *Terry* stop. *Shaffer*, 2018 WL 3141825 at \*4 (citing *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)). Here, the officers saw the firearm next to Hardy and could reasonably conclude he could gain control of it once he awoke. After the officers observed the loaded firearm in a public setting in the context of Hardy's unclear medical and mental state, "to leave the scene . . . without having performed such an inspection [of the vehicle] could have jeopardized their own safety, as well as that of those in the surrounding area." *United States v. Whitaker*, 546 F.3d 902, 911 (7th Cir. 2008); *see also United States v. Blackman*, 2023 WL 3346822, at \*17 (N.D. Ill. May 10, 2023) (justifying protective search while defendant was in handcuffs given "objective reasonable safety concerns" and collecting cases); *United States v. Luckey*, 515 F.Supp.3d 870 (N.D. Ill. 2021) (finding appropriate a limited protective search of the immediate driver's side area after observing a firearm in a vehicle). Thus, the recovery of the firearm and subsequently the bag of cocaine in center console cupholder was justified as a protective search incident to the *Terry* stop.

**Search Incident to a Lawful Arrest**. An officer may search a vehicle "if it is reasonable to believe the vehicle contains evidence of the offense of arrest. *Arizona v. Gant*, 556 U.S. 332, 351 (2009). As discussed, Hardy was lawfully arrested by the officers. It was reasonable for the officers to search the vehicle for further evidence of Hardy's crimes, including further weapons, that were present in his vehicle. *See, e.g.*, *United States v. Hunt*, 2024 WL 50464, at \*1 (7th Cir. Jan. 4, 2024). It matters not that the officers found the bag of cocaine, instead of more weapons.

Finally, the same authority that gave the officers probable cause to arrest Hardy justified the seizure of the firearm and cocaine. Under the plain-view doctrine, government officials may seize property without a warrant if (1) the officer is lawfully present at the place of the seizure, (2) the seized object is in the plain view of the officer, and (3) the incriminating nature of the object is immediately apparent. *United States v. McGill*, 8 F.4th 617, 622 (7th Cir. 2021) (citing *United States v. Raney*, 342 F.3d 551, 558–59 (7th Cir. 2003)). The first two elements are not in dispute. For the third element, the "incriminating nature of an item is 'immediately apparent' if an officer has probable cause to believe that the item is contraband or otherwise linked to criminal activity." *Id.* (citation omitted). As outlined above, the firearm visibly violated at least 720 Ill. Comp. Stat. Ann. 5/24-1(a)(4). Later the officers searched the vehicle and saw in plain view the bag of cocaine in the center console cupholder. Hardy's possession of the cocaine violated at least 21 U.S.C. § 841(a)(1). Accordingly, Hardy's motion to suppress the firearm and cocaine is without merit.

## CONCLUSION

For the foregoing reasons, Hardy's motion to suppress [42] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: March 26, 2024