THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | No. 23 CR 129 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| LAVOIA HARDY | ) | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Lavoia Hardy's motion to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B). (Dkt. 92). Hardy argues the Court should permit withdrawal of his guilty plea because the plea was not knowing and voluntary and he is actually and legally innocent with respect to the charge of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three). (Dkt. 92 at 1). For the following reasons, the Court denies Hardy's motion to withdraw his guilty plea. (Dkt. 92).

### BACKGROUND

On March 14, 2024, the government filed a superseding indictment charging Hardy with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count One), possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) (Count Two), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three). (Dkt. 46 at 1–3). Hardy entered a plea of not guilty to the charges brought in the superceding indictment. (Dkt. 56). A jury trial was set to begin on April 1, 2024, but on March 29, 2024, the parties jointly requested the jury trial be struck and a change of plea hearing be scheduled in its place. (Dkt. 62). On April 1, 2024, Hardy entered a plea of guilty

1

to Count Two and Count Three of the superceding indictment, pursuant to a plea agreement with the government. (Dkt. 63; Dkt. 64 ¶ 5).

**I.     The Plea Agreement**

At the change of plea hearing on April 1, 2024, Hardy's court-appointed attorney at the time, Heather Winslow, explained that the parties "reached [the] plea agreement sort of late last week." (Change of Plea Hearing Tr., Dkt. 91 at 2:9–10). Winslow submits that after the final pretrial conference on March 25, 2024, Hardy "specifically asked for a plea agreement in which the government would dismiss the charge under 18 U.S.C. § 922(g), but allow it proceed under the remaining two counts." (Dkt. 70 ¶ 5). On March 26, 2024, Winslow received a draft of the plea agreement. (Dkt. 70 ¶ 7). And on March 28, 2025, Winslow had a phone call with Hardy, during which she read Hardy the plea agreement "*verbatim* two times." (Dkt. 70 ¶ 8; Change of Plea Hearing Tr., Dkt. 91 at 2:10). Hardy also "had many questions" during the call, which Winslow answered before Hardy ultimately informed her that he wished to proceed via the plea agreement. (Dkt. 70 ¶ 8).

Pursuant to the plea agreement between the government and Hardy, Hardy pled guilty to Count Two (possession with intent to distribute a controlled substance) and Count Three (possession of a firearm in furtherance of a drug trafficking crime). (Dkt. 64 ¶ 5). The government agreed that "[a]fter sentence has been imposed on [Counts Two and Three] to which defendant pleads guilty [...], the government will move to dismiss" Count One (being a felon in possession of a firearm). (*Id.* at ¶ 14). Hardy also agreed that he "fully understands the nature and elements of the crimes with which he has been charged." (*Id.* at ¶ 4). Furthermore, Hardy agreed that he "will plead guilty because he is in fact guilty of the charges contained in Counts Two and Three of the superseding indictment." (*Id.* at ¶ 6).

2

Specifically, Hardy admitted the following facts "establish his guilt beyond a reasonable doubt":

- Hardy "knowingly possessed a loaded firearm and baggies of cocaine base inside of his vehicle." (Dkt. 64 ¶ 6).
- Hardy "stored approximately 25 grams of cocaine base in the center console cupholder of his vehicle." (*Id.*)
- "The cocaine base was packed into 43 baggies and [Hardy] intended to distribute the cocaine base to others in exchange for money." (*Id.*)
- "Next to the bags of cocaine base, wedged between the center console and the driver's seat, [Hardy] stored a loaded Glock [...] that was equipped with an extended magazine." (*Id.*)
- "Hardy possessed the firearm to protect the narcotics in the center console cupholder, himself, and proceeds from narcotics sales, and that at the time he possessed the firearm, he had been convicted of an offense punishable by a term of imprisonment exceeding one year[.]" (*Id.*)

## II. Plea Colloquy

Before the start of the plea colloquy on April 1, 2024, Winslow requested a recess to allow Hardy "a chance to look through [the plea agreement]" before signing the document. (Change of Plea Hearing Tr., Dkt. 91 at 2:11–12). The Court granted that request and gave Hardy additional time to review the plea agreement in-person with his attorney. (Change of Plea Hearing Tr., Dkt. 91 at 2:13–25). After the recess, Hardy affirmed on the record that he reviewed the full plea agreement with his attorney:

> THE COURT: [...] Have you had a chance to review the full plea agreement with your attorney, Ms. Winslow?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: And when you were going through this plea agreement with Ms. Winslow, did you ask her questions about it?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: And did she answer those questions?
> THE DEFENDANT: Yes, ma'am.

3

>THE COURT: Okay. Do you think you've had enough time to review this plea agreement?
>THE DEFENDANT: Yes.
>THE COURT: Okay. Do you want any more time today?
>THE DEFENDANT: No.

(Change of Plea Hearing Tr., Dkt. 91 at 2:13–25).

During the plea colloquy, the Court "review[ed] with [Hardy] the charges in the plea agreement and what the maximum penalties are." (Change of Plea Hearing Tr., Dkt. 91 at 6:8–8:04). Hardy affirmed that he understood that "this particular plea agreement has [him] pleading guilty to Count 2, which charges [him] with possession with the intent to distribute a controlled substance, and Count 3, which is the defendant possessed a firearm in furtherance of a drug-trafficking crime." (Change of Plea Hearing Tr., Dkt. 91 at 6:17–7:01). The Court also directed the government to outline "what the facts are that show that [Hardy is] guilty beyond a reasonable doubt." (Change of Plea Hearing Tr., Dkt. 91 at 17:3–6). The government presented the factual basis as follows:

>MS. SULLIVAN: Your Honor, if this case were to proceed to trial, the government's evidence would show that [...] Lavoia Hardy did knowingly and intentionally possess with intent to distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).
>
>Further, [...] defendant did knowingly possess a firearm, namely, a loaded Glock, Model 23 Gen5, .40 caliber semiautomatic pistol, bearing serial number BSMA780, in furtherance of a drug-trafficking crime for which defendant may be prosecuted in a court of the United States, namely, possessing with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), in violation of Title 18, United States Code, Section 924(c)(1)(A).
>
>Specifically, [...] Hardy was alone and asleep at the wheel of his vehicle [...]. Specifically, Hardy stored approximately 25 grams of cocaine base in the center console cup-holder of his vehicle. The cocaine base was packaged into 43 baggies, and Hardy intended to distribute the cocaine base to others in exchange for money. Next to the bags of cocaine base, wedged between the center console and

4

> the driver's seat, Hardy stored a loaded Glock, Model 23 Gen5, .40 caliber semiautomatic pistol, bearing serial number BSMA780, that was equipped with an extended magazine.
>
> Hardy admits that he possessed the firearm to protect the narcotics in the center console cup-holder, himself, and proceeds from narcotics sales, and that at the time he possessed the firearm, he had been convicted of an offense punishable by a term of imprisonment exceeding one year.
> THE COURT: Okay. Did you hear what the prosecutor just said, Mr. Hardy?
> THE DEFENDANT: Yes.
> THE COURT: Okay. Do you disagree with anything she said?
> THE DEFENDANT: No.
> THE COURT: Okay. Then how do you plead to Count 2 of the superseding indictment?
> THE DEFENDANT: Guilty.
> THE COURT: And how do you plead to Count 3 of the superseding indictment?
> THE DEFENDANT: Guilty.

(Change of Plea Hearing Tr., Dkt. 91 at 17:7–19:7).

In sum, Hardy had "at least two additional opportunities to ask questions or object to the terms of the plea agreement" on the day of the change of plea hearing. (Dkt. 70 ¶ 9).

### III. Biographical Background

At the time of the change of plea hearing, Hardy was 39 years old. (Change of Plea Hearing Tr., Dkt. 91 at 3:20–22). Hardy's highest level of education is 12th grade, but he did not receive a high school diploma or a General Educational Diploma (GED). (Change of Plea Hearing Tr., Dkt. 91 at 4:1–9; Presentence Investigation Report, Dkt. 65 ¶ 89). Hardy's letters describing his legal research further show he is literate. (*See, e.g.*, Dkt. 33). At the time of the guilty plea, Hardy never had a mental health problem for which he had sought medical care. (Change of Plea Hearing Tr., Dkt. 91 at 5:4–6; Presentence Investigation Report, Dkt. 65 ¶ 85).

### IV. Hardy's Relationship with His Attorney

In a letter to the Court on November 17, 2023, Hardy expressed concerns about the communication between him and Winslow. (Dkt. 33 at 1). Specifically, Hardy complained that Winslow did not visit him to discuss the motion to dismiss, did not make a scheduled call to him,

5

did not mail him a draft of the motion, and was not receptive to the case research and other suggestions about motion strategy he sent to her. (Dkt. 33 at 1–2). Hardy explained that Winslow told him the cases and suggestions he sent her (including the possibility of filing a motion to reconsider the denial of the motion to dismiss) would not be effective. (Dkt. 33 at 2). Hardy further states that Winslow would yell on calls when he would "ask[] her if she is going to help or not." (Dkt. 33 at 2). Hardy also notes that Winslow told his mother that Hardy speaks too aggressively to her. (Dkt. 33 at 2).

During the status conference on January 8, 2024, Winslow addressed the concerns outlined in Hardy's letter, including the communication between her and Hardy as well as their disagreement over certain legal issues. (*See* Dkt. 35). Hardy and Winslow ultimately agreed to move forward together. (*Id.*) During the status conference on January 29, 2024, Winslow and Hardy reported that they resolved the prior concerns and their relationship had improved. (Dkt. 36). During the status conference on February 26, 2024 and the final pretrial conference on March 25, 2024, Winslow and Hardy reported no further issues. (*See* Dkts. 41, 59).

After the change of plea on April 1, 2024, Winslow reported, in a June 4, 2024 status report, that on May 23, 2024, Hardy called her and "alleged that he was forced to enter the plea agreement, and that the government cannot charge him with a violation of 18 U.S.C. § 924(c), absent a conviction under 18 U.S.C. § 922(g)." (Dkt. 70 ¶ 16). Winslow "disagree[d] with Mr. Hardy's assessment of what the government can and cannot charge . . . [and] attempted to explained her disagreement with Mr. Hardy, at which point he became more belligerent and terminated the call." (*Id.* ¶ 17). Winslow subsequently filed a motion to withdraw, which the Court granted. (Dkts. 71, 75). The Court then appointed Hardy another attorney. (Dkt. 80).

6

**DISCUSSION**

Under Federal Rule of Criminal Procedure 11(d)(2)(B), the Court "may withdraw a plea of guilty" where "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "[F]air and just reason[s]" for the withdrawal of a guilty plea include that the plea was not knowing and voluntary, that a defendant is actually innocent, or that a defendant is legally innocent. *United States v. Mays*, 593 F.3d 603, 607 (7th Cir. 2010). A defendant " 'faces an uphill battle,' however, in overcoming the 'presumption of verity' that the law attaches to a guilty plea" and a defendant's statements made during a Rule 11 plea colloquy. *United States v. Neal*, 907 F.3d 511, 514 (7th Cir. 2018) (quoting *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009)); *United States v. Bennett*, 332 F.3d 1094, 1099 (7th Cir. 2003). Hardy argues withdrawal of his guilty plea is proper because (1) the plea was not knowing and voluntary and (2) he is actually and legally innocent. (Dkt. 92 at 1).

### I. Knowing & Voluntary Plea

"[B]oth due process and Rule 11 require that a defendant's guilty plea be made voluntarily and knowingly" because "by [p]leading guilty to a criminal charge, a defendant waives several fundamental constitutional guarantees." *United States v. Fard*, 775 F.3d 939, 943 (7th Cir. 2015) (quoting *United States v. Fernandez*, 205 F.3d 1020, 1024 (7th Cir. 2000)). Specifically, a defendant "must fully comprehend[] the elements of the crime to which he is confessing[.]" *United States v. Fernandez*, 205 F.3d 1020, 1025 (7th Cir. 2000) (quoting *United States v. LeDonne*, 21 F.3d 1418, 1423–24 (7th Cir. 1994)). Accordingly, Rule 11 requires the Court "inform the defendant of, and determine the defendant understands . . . the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G).

7

The law, however, "does not require 'literal compliance' with the Rule." *Fernandez*, 205 F.3d at 1024. And Rule 11 itself contains a harmless error provision, which dictates that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h). Instead, "[t]o determine whether the defendant fully understands the nature of the charge[,]" courts employ a totality of the circumstances approach, under which courts consider "(1) the complexity of the charge; (2) the defendant's level of intelligence, age, and education; (3) whether the defendant was represented by counsel; (4) the judge's inquiry during the plea hearing and the defendant's statements; and (5) the evidence proffered by the government." *Id.* at 1025. Additionally, where a defendant rests their claim on the ineffective assistance of counsel, "a defendant must show both that counsel's performance was objectively unreasonable and that, but for counsel's errors, the defendant would not have pled guilty." *United States v. Lundy*, 484 F.3d 480, 484 (7th Cir. 2007).

Hardy argues that his guilty plea was not knowing because he did not understand the nature of the charge that he possessed of a firearm "in furtherance of a drug trafficking crime," in violation of 18 U.S.C. § 924(c)(1)(A). (Dkt. 92 at 3). Specifically, Hardy alleges that he "did not understand the meaning behind the 'in furtherance of' element[.]" (*Id.*) (quoting 18 U.S.C. § 924(c)(1)(A)). Hardy bases this claim on the ineffective assistance of defense counsel in allegedly failing to explain the elements of the § 924(c)(1)(A) charge to him, the circumstances under which defense counsel Winslow communicated the plea agreement to him, and the Court's alleged lack of inquiry into whether Hardy understood the charges against him. (Dkt. 92 at 2–3).

Applying the totality of circumstances approach here, Hardy's intelligence, age, and education all support a determination that his guilty plea was knowing and voluntary. While Hardy did not finish 12th grade, his letters to the Court make clear that he is capable of reading and

8

understanding basic legal concepts. (*See, e.g.*, Dkts. 33, 100). Furthermore, while the § 924(c)(1)(A) charge is not quite as straightforward as the possession with intent to distribute a controlled substance charge, *United States v. Rojo*, 295 F. App'x 86, 88 (7th Cir. 2008), the charge is nonetheless straightforward enough that the Court does not doubt Hardy's ability to understand it with the assistance of his attorney. The legal meaning of the "in furtherance of" element is the phrase's "natural meaning" of "furthering, advancing or helping forward." *United States v. Castillo*, 406 F.3d 806, 814 (7th Cir. 2005) (quoting *United States v. Hamilton*, 332 F.3d 1144, 1149 (8th Cir. 2003)). The § 924(c)(1)(A) charge is thus unlike complex charges, such as wire fraud, which have elements whose legal meaning is not the "simple and common meaning" of the statutory language. *Fard*, 775 F.3d at 944 (explaining that the common meaning of the specific intent to defraud element to a layperson is distinct from the element's legal meaning).

Furthermore, Hardy's unevidenced assertion that his defense attorney never explained the elements of the § 924(c)(1)(A) charge is undermined by his express statement in the plea agreement that he "read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney." (Dkt. 65 ¶ 4). The Court presumes the truth of this representation, which squarely forecloses Hardy's ineffective assistance of counsel claim. *Rojo*, 295 F. App'x at 88 ("And in fact, Rojo acknowledged in his plea agreement that his attorney had explained the charge and that he understood its 'nature and elements.' Rojo tries to distance himself from this admission by saying here that he did not understand the plea agreement he signed, but he told the district court that he had enough time to discuss the case with his lawyer, and that statement is presumed to be truthful."). Hardy also agreed that he "fully understands the nature and elements of the crimes with which he has been charged." (Dkt. 65 ¶ 4). During the plea colloquy, Hardy also expressly stated that he had a full opportunity to ask his attorney questions.

9

(Change of Plea Hearing Tr., Dkt. 91 at 2:13–25). And while Hardy's relationship with his attorney was far from perfect, there's no evidence that their communication was impaired at the time the plea agreement was made and the guilty plea was entered (*See, e.g.*, Dkt. 36).

Moreover, while the Court did not provide extensive guidance on the meaning of the § 924(c)(1)(A) charge's elements, the Court stated each charge along with its elements. (Change of Plea Hearing Tr., Dkt. 91 at 6:17–7:01). Hardy then affirmed that, with the guidance of his attorney, he understood that "this particular plea agreement has [him] pleading guilty to Count 2, which charges [him] with possession with the intent to distribute a controlled substance, and Count 3, which is the defendant possessed a firearm in furtherance of a drug-trafficking crime." (*Id.*) The government also outlined the charges, their elements, and "the facts [...] that show that [Hardy is] guilty beyond a reasonable doubt" with respect to the § 924(c)(1)(A) charge, including:

> . . . that he possessed the firearm to protect the narcotics in the center console cupholder, himself, and proceeds from narcotics sales, and that at the time he possessed the firearm, he had been convicted of an offense punishable by a term of imprisonment exceeding one year.

(*Id.* at 18:16–20).

Hardy then reaffirmed his agreement with the government's description of the § 924(c)(1)(A). charge and its factual basis. (*Id.* at 18:21–19:07). The Seventh Circuit has expressly "approved [these] practices in which prosecutors identify the elements of the charged offense followed with an inquiry by the court confirming the defendant's understanding of the crime[,]" and in which prosecutors "recount the specific facts which satisfy the elements of the charged offense followed by an admission of those facts by the defendant under questioning by the trial judge." *Fernandez*, 205 F.3d 1020 at 1025. The Court thus concludes that Hardy's guilty plea was knowing and voluntary.

II. **Actual & Legal Innocence**

Hardy's second claim that withdrawal of his guilty plea is proper based on his actual and/or legal innocence is also unavailing. To show that a claim of actual innocence is a fair and just reason for the withdrawal of a guilty plea, "a defendant's bare protestations of innocence—especially after a knowing and voluntary guilty plea in a thorough Rule 11 colloquy—will not suffice[.]" *United States v. Carroll*, 412 F.3d 787, 792 (7th Cir. 2005) (quoting *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001)). Rather, "[t]he defendant must proffer some credible evidence" that calls into question the factual basis of the plea. *Id.* Similarly, a legal innocence claim—that "it is impossible for [the defendant] to be convicted" based on the insufficiency of the evidence—also requires credible evidence that calls into question the government's ability to satisfy its burden of proving every element of the charge beyond a reasonable doubt. *United States v. Gomez-Orozco*, 188 F.3d 422, 425–27 (7th Cir. 1999) (defendant was required to put forward credible evidence that he was a U.S. citizen to establish claim that he was legally innocent of an immigration crime that required he be a non-citizen).

Under 18 U.S.C. § 924(c)(1)(A), "possession" of a firearm "may be either actual or constructive." *United States v. White*, 95 F.4th 1073, 1078 (7th Cir. 2024). "To prove constructive possession, the government must show more than a defendant's 'mere proximity' to the firearm[,] [b]ut 'proximity coupled with evidence of some other factor—including connection with [an impermissible item], proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise is enough to sustain a guilty verdict.'" *Id.* (quoting *United States v. Griffin*, 684 F.3d 691, 696 (7th Cir. 2012)). And, as mentioned above, "in furtherance of" means "furthering, advancing or helping forward." *Castillo*, 406 F.3d at 814 (quoting *Hamilton*, 332 F.3d at 1149). Whether a defendant possessed a firearm "in furtherance of" a drug trafficking

11

crime is a "fact-intensive" analysis that turns on several factors, including "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *United States v. Perryman*, 20 F.4th 1127, 1134 (7th Cir. 2021) (quoting *Castillo*, 406 F.3d at 815). Ultimately, "the evidence must establish a *specific* nexus between the *particular* weapon and the *particular* drug crime at issue." *Castillo*, 406 F.3d at 815 (emphasis original).

Here, Hardy's claim of actual and legal innocence fails. Hardy makes no factual allegations nor offers any evidence whatsoever supporting his bare assertion of actual and legal innocence with respect to the § 924(c)(1)(A) charge. (Dkt. 92 at 1; Dkt. 98 at 6). This is grossly insufficient to call into question the facts he admitted in the plea agreement and during the plea colloquy. Specifically, Hardy admitted that he kept a loaded firearm in extremely close proximity to the controlled substances he intended to distribute, possessed the firearm illegally (as a felon), and that he possessed the firearm "to protect the narcotics . . ., himself, and proceeds from the narcotics sales." (Change of Plea Hearing Tr., Dkt. 91 at 18:16–20).

These admitted facts are sufficient evidence that Hardy possessed the firearm "in furtherance of" his drug trafficking crime. The firearm's close proximity and connection to Hardy and the narcotics he intended to distribute—"[n]ext to the bags of cocaine base, wedged between the center console and the driver's seat" Hardy occupied—evidence Hardy's control over the weapon and establish his constructive possession of the weapon. (Change of Plea Hearing Tr., Dkt. 91 at 18:5–20). Hardy's admission that the firearm's purpose was to protect the narcotics, himself, and proceeds from the narcotics distribution, on its own, is sufficient evidence of a specific nexus between the firearm and the drug crime at issue. *White*, 95 F.4th at 1078; *Perryman*, 20 F.4th at

1134–35; *Castillo*, 406 F.3d at 814–15 ("[W]hen the charge is possession with the intent to distribute narcotics, a gun which is possessed (but not held, pulled, brandished or fired) plausibly could advance the possession and future distribution of narcotics in a variety of ways. In this context, the weapon can protect or be available to protect the possession and future distribution of the drugs or the drug dealer. The presence of a weapon serves as a potent warning to those who might contemplate stealing the drugs and a potent tool to defend against those who actually undertake to steal the contraband."); *United States v. Brown*, 724 F.3d 801, 802–04 (7th Cir. 2013). Indeed, "possessing a gun to protect the drugs and the dealer and to serve as a warning to those who might attempt to steal the drugs" is "the archetypical possession of a gun in furtherance of drug trafficking[.]" *United States v. Doody*, 600 F.3d 752, 755 (7th Cir. 2010). This nexus is further evidenced by the illegal status of Hardy's possession of the firearm and that the firearm was loaded and equipped with an extended magazine. (Change of Plea Hearing Tr., Dkt. 91 at 18:5–20). Hardy's claim of actual and legal innocence thus fails.

## CONCLUSION

For the reasons above, the Court denies Hardy's motion to withdraw the guilty plea [92].

_____
Virginia M. Kendall
United States District Judge

Date: December 20, 2024

13